Judge Underwood,
delivered the opinion of the court.
Benjamin Gilbert died in 1814, leaving a tract of land, slaves and personal property. By *593 his last will he devised his farm, most of his live stock, and all his slaves except two, to his wife for life. After her death the property was to be divided between his two children, Isaac and Polly, both of whom were infants at the death of the testator. To Isaac the testator-devised his slave Tom, and to Polly his slave Paulina. From a previous part of the will it would seem that the testator intended that his wife should use and control the slaves given absolutely to the-children by subsequent clauses, until they became of age or married. We do not however regard this as important in the decision of this cause, for whatever may have been the right of the wife over the two negroes given to the children, it terminated on her death which happened in 1814, about two months after the death of her husband. Thereafter the title to the two slaves, Tom and Paulina, was fully vested in -the children.
After the mother’s death, Isaac the son died, being at the time of his death still in his minority. Some time thereafter, his sister Polly died, under age at the time. The testator lived and died in Jessamine county, where his land was situated, and where the personal estate and slaves left by him continued for some years after his death, and until after the death of his daughter who died at the house of an aunt, in the county of Madison; to whose residence the daughter removed upon the death of her mother.
Upon the death of Polly Gilbert, Squire Turner, and Simon Hudson obtained letters of administration •upon her goods and chattels from the county court of Madison. The county court of Jessamine also undertook to grant administration on the goods and chattels of Polly Gilbert; and one question in the cause is, to which of these tribunals the right to grant the administration belonged.
The testator appointed Nathaniel Harris, Hugh A. Anderson, and John Eakin, executors of his will. Harris declined acting. Anderson and Eakin took upon themselves the execution of the will, and on the 19th September, 1814, executed bond as required by law, with Francis Lowin and Elijah Bourne, as sureties. 'Eakin died, leaving a will in which Andrew and James McCampbeil were appointed executors. *594 Lowin died leaving a will in which Benjamin and Francis Lówin, jun. were appointed executors. Turner and Hudson, as administrators of Polly Gilbert, filed this bill against Hugh A. Anderson, as the surviving acting executor of Benjamin Gilbert deceased, the McCampbells as executors of Eakin, the deceased executor of Benjamin Gilbert, the Lowins, executors of Lowin the deceased surety, and Bourne, with a view to obtain a settlement and distribution of the estate of Benjamin Gilbert. They obtained a decree for $8193, to reverse which this writ of error is prosecuted.
The following items compose the aggregate of the decree; to wit;
$2915 00 As the value of the slaves in 1824, when the executors gave them up to the relations of Benjamin Gilbert, supposing his brothers and sisters to be heirs to the exclusion of the maternal kindred of Polly Gilbert, the daughter.
735 50 As the hire of the slaves from the time they were surrendered, up to the time of rendering the decree.
404 50 As rents for the land from the death of Polly Gilbert’s mother, up to the time of Polly Gilbert’s death.
2363 87 1-2 As the proceeds of the personal estate and hire of slaves, up to the time the executors settled with commissioners appointed . .by the county court, after allowing for disbursements made by the • executors, and for their services, with the exception of certain sums paid by the executors to the brothers and sisters of Benjamin Gilbert. These payments were allowed the executors by the county court as credits, but the circuit court, in the decree refused to do so.
1774 75.1-2 As funds in the hands of Clark, agent for the executors, arising in part from the personal estate and the hire of slaves, not included elsewhere.
Court of ooun-ifÜ'testate're-sides at his death, has ju-"a’fa°dml istration on „otwithstana. ing hisperson-alty lies, at *11S ^eath>in ty.° ^ C°UP
Since act of Je'uh'Saves to'passby last wills and tes-laments as executor h’aT no title in or power over a slave which is specifically
the d®0"a nat vest executor with a”y g]0ayes orwith any authority t0 control the hira should executor rent the land or hire out the slaves bis sureties will not be responsible for rent or hire.
*595 We think the court properly decided that the Madison county court had the right to grant administration on the goods and chattels of Polly Gilbert. Her place of residence at the time of her death was in Madison, and that gave the court of that county jurisdiction. This opinion results from the tenth and twenty-ninth sections of the act of 1797, relating to wills, administrations, &c. see II. Digest 1244, for the first, and 1. Digest 527, for the last.
The decree cannot be sustained. The counsel for the defendants in error, as if sensible that the decree was erroneous, contend that there is no assignment of error which will justify a reversal. By some means the particular errors relied on have been separated from the record, and are not before us; but taking the errors assigned, to be such only as are admitted in the brief of the defendants, we think there is enough to shew that the court erred.. We do not recollect all the errors which were assigned. Upon them a supersedeas was granted to operate upon the whole decree. We cannot suppose that there has been any impropriety committed by withdrawing the errors intentionally. The presumption is that the errors have been casually lost or mislaid. We shall therefore proceed to state our objections to the decree, without noticing the errors assigned in detail.
Since the passage of the act of 1800, (H. Digest 1247) requiring slaves to pass by last wills and testaments, as real estate, an executor has no title in or power over a slave specifically devised, unless some power is expressly reserved to him; see Groves vs. Luckey, I. Marshall 74. Justices of Mason vs. Lee, I. Monroe 251. Thomas and wife vs. Tanner, VI. Monroe 58.
It clearly follows from the statute of 1800 and the authority of the foregoing cases in which it has been noticed by this court, and its effect and operation decided, that if the executors of Benjamin Gilbert’s will were never vested with title to his land and slaves, or any authority to control the rents and profits and hire, in their character as executors; then so much of the decree as holds the sureties responsible for rents and hire is altogether untenable. If the land and slaves passed to the devisees directly, and without *596 the assent of the executors, then the assumption of control by the executors was an unauthorized act. If such be the legal effect of the will, the executors had no more right to take possession of the land and slaves, and rent and hire them, than any stranger, ’ J °
When land or slaves pass to the devisees directly and without assent of executor, he has no more right to take possession of them or of their rents or hire than a stranger.
Pact, that will authori-“to divide’?* land & slaves equally a- _ Mcj^does^not vest him with any title to slaves"norr does it confer on him any o^Frethem1
will vests executors with no land'or flaves and they med die with them lJu^orhfring outthe slaves, each executor ly responsible lor his own aots in respect to the land & slaves, & not for those of his co-executor.
*596 Upon an examination of the provisions of the will? it is clear that the widow was vested with the title and right to control the plantation until the testator’s son Isaac arrived at age or married. Before either of these events happened, both Isaac and his mother were dead.. During the widow’s life the slaves were also hers, with the exception of Tom and Paulina. After the death of his wife, the testator provides that the land and slaves shall be divided by bis executors, into two lots as nearly equal as may be, and that his son Isaac shall take choice: the land and slaves selected by him to belong to him and his heirs forever; and the other lot to belong to his daughter Polly, and her heirs forever. Then follows this clause: “In case either of these my children should be called offby death, it is my will that my whole property be vested in the other.” It cannot be contended for a moment that Benjamin Gilbert died intestate, as to any part of k‘s ^anc^ or negroes- To whom then did they pass by the will? Certainly not to his executors, but to his wife and children. The executors had an authority at death °f his wife to make a division between the children, but this authority they never executed; and upon the death of Isaac it was altogether unne-cessary that they should, for the whole estate then passed to Polly Gilbert; and whether the half passed to her, as heir to her brother Isaac, or as a contin£ent ^ev'se un^er the will, it is unimportant to decide. Giving an authority to the executors to divide the estate, did not vest a title in them. It is no a stronger case than that of Prewitt vs. Durham’s executors, V. Monroe 18, in which it was decided that an authority to sell lands, conferred no title on the executor. As then the lands and slaves passed ^y wi^ io devisees, and the executors never had any title to either, and no authority to rent or hire, it follows that the renting and hiring proceeded upon their indiv‘dual responsibility, and that their sureties in the executor’s bond, are not liable either for rent or hire; nor is one executor liable for the acts of the *597 other; each must be answerable for his own conduct, in meddling with the property when he had no right.
When will does not vest executor with any title to or control over the slaves and he gives or transfers them to persona not entitled to them, hisitireties are not responsible (to the devi-see) for value of the slaves, Sale ofa slave tor ^whenthé «lave is spe-cifioally devi-dive8t°ithe°ti-tie of devisee,
*597 If it were conceded that the executors, as such, were authorized to take possession of the land and slaves, devised to Mrs. Gilbert for her life, after her death, and to rent and hire, still the decree could not be sustained; because, in regard to the slaves Tom and Paulina, it is very clear the executors had no such right; and their hire seems to have entered into the estimate, and to have constituted a part of the amount decreed. These slaves on the death of Mrs. Gilbert, were indubitaby vested in the children, without any act to be performed on the part of the executors. The guardian of the children was the proper person to hire them out, during the minority of the wards.
But again, if the executors were liable, as such, and their sureties bound with them for rents and hire, still the decree is erroneous; because a part of the rents and hire accruing after the death of Mrs. Gilbert, belonged to her son Isaac. That portion of the rent and hire passed to the administrator of Isaac Gilbert, and not to his sister, as heir or devisee, Isaac Gilbert’s administrator is no party to the suit. Instead of allowing any part of the rent and hire accruing after the death of the widow and before the death of Isaac, to go to the administrator of the latter, the decree even gives to Polly Gilbert’s administrators the hire of Isaac’s slave Tom. That hire does as clearly belong to Isaac’s administrators as does the hire of Paulina belong to the administrators of Polly Gilbert.
It clearly results from the foregoing view of the case, that if the court erred in holding the sureties of the executors responsible for the rent of the land, and the hire of the slaves, that it was equally erroneous to hold them responsible, and to decree against them, for the value of the slaves. If the executors seized the slaves, or withheld them by force from the devisees, or if the executors sold them, or delivered them over to others, such acts in those cases where the act of 1800 applies, might and would render the executors liable as trespassers in their individual ca *598 pacity. For the injury, a common law remedy would be entirely adequate to afford relief. A sale made of a slave, by an executor, specifically devised, could not, since the act of 1800, divest the title of the dev-*see- The purchaser, in such a case, could be deprived of the slave, in an action of detinue. We perceive no ground on which to hold any of the defendants responsible for the value of the slaves, either at law or in chancey, except those who have had actual possession of the slaves. Believing as we do, that ^le act 1800 aPP^*es' bond °f the executors does not embrace the slaves or the rents of the land; every person therefore, who may have intermeddled with either, is individually accountable, and cannot involve those who have not had possession, nor exercised any act of control over the property.
We think the error is very manifest, in permitting the administrators of Polly Gilbert to recover rents and hire which Isaac Gilbert was entitled to. To half the rent of the land for the time between the death of Mrs. Gilbert and the death of Isaac Gilbert; and to half the hire of the slaves devised to Mrs. Gilbert during her life, for the same time; and to all the hire of Tom accruing prior to the death of Isaac Gilbert, Polly Gilbert’s administrators have no right, yet the deccee gives them all this. Isaac Gilbert may have contracted debts for necessaries, and his personal representative is entitled to the half of the rent and hire of the slaves, growing out of the land and slaves devised to his mother, accruing for the time between her death and his death.
By the will of Benjamin Gilbert his wife was entitled to a house, &c. as her absolute property. We think the inference is irresistible, that after her death this property was sold as Benjamin Gilbert’s, and that the administrators of Polly Gilbert have obtained a decree for it. Mrs. Gilbert’s personal representative is entitled to the money arising from the sale of personal property bequeathed absolutely to her.
We have disposed of the decree, so far as it regards the rents of the land, the value of the slaves and their hire; it only remains to examine that part of the decree which relates to the personal estate of the testator. It seems that the executors paid to the *599 brothers and sisters of the testator, upwards of $500, regarding1 them as entitled to distribution after the death of Polly Gilbert. These payments were allowed as credits by the county court, in a settlement with the executors; but the circuit court refused to allow them, and decreed their amount to the defendants in error, with interest. We concede the propriety in refusing to allow the executors credit for these payments, but we cannot admit that it was right to charge the executors interest upon the amount further back than from the time they ought to have made distribution. The sums thus paid seem to have been applied through mistake, under the belief, on the part of the executors, that they were thereby discharging their duty. It is certain that the executors made no profit upon the money thus used. Under such circumstances we deem it equitable to regard the moneys so fpaid, as remaining with the executors, and as a fund on which it would be unjust to charge interest, except for the time the executors were in default by refusing to pay it to the proper distributee.
For pecunia-T legacies or chatties °f ities ofexecu-tors arelia-
slave (since * act of 1800) °Perates as an veyance of*' the slave to the devisee,
Hewitt, for plaintiffs; Turner, for defendants.
In conclusion, we deem it proper to remark that we donot regard the devise of a slave, since the ac tof 1800, as we would a pecuniary legacy, or the bequest of a chattel other than slaves. For such legacies, executors are unquestionably liable, and so are their sureties up-onthe executor’s bond. But the devise of a slave since the statute of 1800, operates as an absolute convey-anee of the title to the devisee, altogether independent of the will of the executor; and he has no more right to assume the control of a slave so devised, in virtue of his office as an executor, than he would have if he were not executor; nor will his unauthorized and mistaken interference impose any liability upon his sureties or co-executors.
As the executor Anderson has released errors and resists a reversal of the decree, as to him it must be affirmed; but as to the other plaintiffs in error, it must be reversed with costs, and remanded, so that a decree as to them may be entered, not inconsistent with this opinion.